655 F.Supp. 169 (1987)
In re HOPS ANTITRUST LITIGATION.
No. 86-1589C(3), MDL No. 706.
United States District Court, E.D. Missouri, E.D.
February 19, 1987.
Martin J. Toft, Craig N. Schmid, Armstrong Teasdale Kramer Vaughan & Schlafly, St. Louis, Mo., Terrence C. Sheehy, Scott E. Flick, George Billinson and Eifiona L. Main, Howrey & Simon, Washington, D.C., for plaintiff Anheuser-Busch, Inc.
*170 Robert Smith Allen, Lewis & Rice, St. Louis, Mo., Merrill G. Davidoff, Berger & Montague, Philadelphia, Pa., D. Gotz M. Pollzien, West Germany, for defendants John I. Haas, GmbH, John Barth & Sohn, and L. Oppenheimer & Co., Inc.
Victor C. Murphy, Utz P. Toepke, Graham & James, New York City, Prof. Dr. Wolfgang Harms, Dagmar Siewert-Harms, Rechtsanwaltin, West Germany, for defendants Horst Co., and Sebastian Klotz.
William A. Richter, Peper Martin Jensen Maichel & Hetlage, St. Louis, Mo., Sutton Keany, Winthrop Stimson Putnam & Roberts, New York City, for defendant L. Oppenheimer & Co., Inc.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court on the motions to dismiss or alternatively to stay this action pending arbitration filed by defendants Fromm, Mayer-Bass, GmbH ("FMB"); John I. Haas GmbH ("Haas"); Joh. Barth & Sohn ("Barth"); Horst Company ("Horst"); and Sebastian Klotz ("Klotz").[1] Plaintiff opposes the motions.
Plaintiff, Anheuser-Busch, Inc. ("A-B"), a Missouri corporation, is a beer brewer and a purchaser of hops[2] and hop services.[3] Movants are German-based merchants[4] of hops, hop products,[5] and hop services. From approximately 1969 to the present, plaintiff and movants entered into contracts for movants' sale of hops to plaintiff. From 1969 to 1982, these parties' contracts did not include arbitration or choice of law provisions. Beginning sometime in 1982, each contract included an arbitration clause providing, in relevant part, that "any dispute arising out of or relating to this agreement, including its interpretation, validity, scope and enforceability, shall be resolved exclusively and finally by arbitration, to be held in Munich, Germany." The contract paragraph relating to arbitration further states that the arbitration will be conducted in English pursuant to specified rules before three arbitrators who are fluent in the English and German languages. Each of the contracts entered into since sometime in 1982 also specifies that the "agreement shall be governed and construed in accordance with the laws of the Federal Republic of Germany."
Plaintiff alleges that beginning in about 1976 and until "sometime in 1984," movants and others engaged in a combination and conspiracy in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act. Plaintiff alleges movants took part in an agreement, understanding, and concert of action, the substantial terms of which were to fix prices and price ranges at which hops, hop products, and hop services were quoted and sold to brewers. Pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, plaintiff seeks damages, equitable relief, and costs for defendants' alleged violations of the Sherman Act.
Movants seek arbitration of plaintiff's claims as to all contracts. Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201; the Federal Arbitration Act, *171 9 U.S.C. §§ 3 and 4; and Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), movants seek arbitration of the contracts containing arbitration clauses.
With respect to the pre-1982 contracts not containing arbitration clauses, movants make various arguments in support of their position that plaintiff's claims regarding those contracts should also be the subject of arbitration. FMB urges that since the mechanism to agree upon pricing and contracting has been the same throughout the parties' relationship, and since various pre-1982 contracts have been "redocumented" after 1982 with the "redocumented" contracts containing arbitration clauses, the parties' intent to arbitrate is clear as to the earlier contracts. FMB also contends the broad language of the post-1981 contract clause requiring arbitration of issues "arising out of or relating to" the contracts should "be read to encompass any disputed transaction turning upon the same pricing mechanism that has been in place throughout the period during which the parties have done business." To avoid the expense of ongoing discovery and trial proceedings, and to realize the benefits of arbitration, FMB contends the pre-1982 contract claims should be arbitrated. Cf. Dean Witter Reynolds v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (requiring arbitration of pendent arbitrable claims). Horst and Klotz urge it would be "wasteful and most inconvenient for all parties involved, if the post-1982 purchases were to be decided by arbitration in Munich, Germany, and a separate trial were to be conducted in this District on A-B's claims for earlier dealings." Haas and Barth urge that it would be "wasteful of judicial resources and unduly expensive for defendants" to have the post-1982 contract claims arbitrated while the pre-1982 contract claims are simultaneously litigated.
Plaintiff counters these motions should be denied as to the pre-1982 contracts which did not contain arbitration clauses. See Mitsubishi, supra, 105 S.Ct. at 3354 (court must first determine whether the parties agreed to arbitrate the dispute); AT & T Technologies, Inc. v. Communications Workers of America, ___ U.S. ___, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (a party cannot be required to submit a dispute to arbitration without an agreement to so submit); Sulit v. Dean Witter Reynolds, Inc., [current] Fed.Sec.L.Rep. (CCH) ¶ 92,755 (W.D.Mo.1986) [Available on WESTLAW, DCTU database] (court refused to require arbitration on one of three trading accounts when parties agreed to arbitrate only with respect to other two accounts); Seaboard Coastline R.R. Co. v. Trailer Train Co., 690 F.2d 1343, 1348-50 (11th Cir.1982) (court found an arbitration clause in a license agreement between the parties did not encompass the parties' dispute under a separate leasing arrangement between the parties). Plaintiff also distinguishes Byrd, supra, on the ground the court there rejected the "intertwining" doctrine. Plaintiff contends the Byrd court recognized this may result in simultaneous arbitration and litigation, or piecemeal litigation of issues, and may impact adversely on "efficient and speedy dispute resolution." Byrd, supra, 470 U.S. at 221, 105 S.Ct. at 1242.
With respect to the post-1981 contract claims, plaintiff asks the Court to
withhold its decision until it can be determined whether a German arbitration panel will entertain A-B's claims under the U.S. antitrust laws.
See Mitsubishi, supra, 105 S.Ct. at 3360 n. 19 (an agreement to arbitrate may be condemned as against public policy if the agreement operates "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations"). Plaintiff points to various principles purportedly governing arbitration in Germany which may preclude arbitration of post-1981 contract claims, e.g., a German arbitration panel may conclude that a Sherman Act or other statutory claim is outside the scope of any arbitration proceeding, or is outside the scope of such a proceeding here where, according to the contracts' choice-of-law provisions, the governing law is German rather than United States law.
*172 Forum selection clauses are presumptively valid unless the party opposing the clause can
clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching ... or that proceedings in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in Court.
The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12, 15, 18, 92 S.Ct. 1907, 1914, 1916, 1917, 32 L.Ed.2d 513 (1972); see also Mitsubishi, supra, 105 S.Ct. at 3354-55, 3357. In the international commercial setting, courts will enforce the parties' agreement to arbitrate disputes, including antitrust claims. Mitsubishi, supra. A party, however, may not be required to arbitrate a dispute it did not agree to arbitrate. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).
Here, there is no contention that the arbitration clauses in the post-1981 contracts are invalid due to fraud or overreaching. There is no evidence of record to suggest either party did not have a chance to review, suggest alterations in or refuse the terms of the contracts. The contracts are not voluminous documents or documents containing terms difficult for hop-related businesses, such as the parties, to follow or comprehend. Nor is there any contention that the forum selection clause was hidden from or undisclosed to any party. Thus, the contracts are not invalid due to fraud or overreaching. See Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgesellschaft MBH, 618 F.Supp. 344, 347-48 (N.D.Ill.1985).
Plaintiff urges the arbitration clauses should not be enforced until it is clearly established that the German arbitration panel or court will allow plaintiff to pursue its United States antitrust statutory claims.
The United States Supreme Court has recognized "[t]here is no reason to assume at the outset of the dispute that international arbitration will not provide an adequate mechanism." Mitsubishi, supra, 105 S.Ct. at 3359. Nothing of record indicates the parties were prevented from excluding statutory, antitrust, or other claims from the scope of the arbitration agreement. See id. at 3355. The record here reflects no obstacle to prevent plaintiff from submitting this issue to the German courts or to a German arbitration panel prior to this date. Furthermore, during oral argument, movants' counsel stipulated that the plaintiff's antitrust claims were arbitrable in Germany. Under the circumstances, the Court does not now find either (a) the German arbitration proceedings will be so "gravely difficult or inconvenient," or (b) the operation of the choice of forum and choice-of-law provisions will prohibit pursuit of plaintiff's antitrust claims,[6] as to support a court order not enforcing the parties' arbitration agreement. Accordingly, the movants' motion to dismiss will be granted with respect to plaintiff's claims regarding any and all post-1981 contracts containing arbitration clauses.
The Court further finds that the claims relating to pre-1982 contracts not containing arbitration clauses are not subject to arbitration. By their terms, the contracts available of record are not interrelated. In other words, there is not one general contract, containing an arbitration clause, that clearly covers the parties' ongoing relationship, with separate agreements amending, supplementing, or incorporated into the "umbrella" contract. In such a situation, disputes regarding the latter agreements may be subject to arbitration. See, e.g., Consumer Concepts, Inc. v. Mego Corp., 458 F.Supp. 543 (S.D. N.Y. 1978). Here, each contract encompasses a discreet transaction between the parties for the sale and purchase of hops *173 and hop-related items near the time of contracting or in the specified future.
While FMB urges that the "redocumented" contracts evince the parties' intent to arbitrate disputes relating to all contracts, the Court disagrees. The redocumented contracts explicitly incorporate an arbitration provision, a change that would not be necessary if, as FMB seems to argue, the arguably unchanged continuity of the parties' ongoing relationship clearly demonstrates an agreement to arbitrate all disputes related to the contracts. The record reflects no agreement by the parties to amend earlier contracts to provide for arbitration of disputes, and counsel did not enter into such an agreement during oral argument. Cf. Mitsubishi, supra, 105 S.Ct. at 3357 (noting some courts recognize an agreement to arbitrate may be acceptable even if entered into after the dispute arises).
Finally, the fact that the proceedings may be complex when arbitration and litigation are pursued contemporaneously is not alone a sufficient basis on which to require arbitration of all disputes. See Byrd, supra (requiring arbitration of state law claims while federal securities claim remained the subject of litigation); see also Mitsubishi, supra, 105 S.Ct. at 3351 n. 7 (noting the district court retained jurisdiction over some claims while requiring arbitration of other claims).
Accordingly, movants' motion to dismiss or stay for purposes of arbitration will be granted in part and denied in part. To the extent these motions raised issues unrelated to arbitration, the motions remain under consideration.

ORDER
A memorandum dated this day is hereby incorporated into and made a part of this order.
IT IS HEREBY ORDERED that the motions to dismiss or stay this case for arbitration proceedings be and the same are granted in part and denied in part as specified herein.
IT IS HEREBY FURTHER ORDERED that this action is dismissed and the parties are directed to pursue arbitration only as to the antitrust claims directed to each post-1981 contract that contains an arbitration clause. This Court retains jurisdiction over the antitrust claims directed to any pre-1983 contract that does not contain an arbitration clause.
The motions remain under consideration to the extent they raise issues unrelated to arbitration.
NOTES
[1] This order deals only with arbitration issues. Other issues raised in some of these defendants' motions, such as personal jurisdiction, subject matter jurisdiction, and venue issues, will be addressed as necessary by separate order(s).
[2] Hops are alleged to be "agricultural products used almost exclusively to impart a flavor and aroma to beer, ale and similar beverages.... After being picked, hops are kiln-dried, compressed into bales, and delivered to hop dealers."
[3] Hop services are alleged to "include the pelletization and extraction of hops and the storage of hops and hop products."
[4] Plaintiff alleges movants are hop dealers who "contract to purchase hops from hop growers in the current crop year or for delivery several years in the future. Hop dealers also contract to sell hops, hop products and hop services to United States and foreign brewers for delivery in the current year or in future years."
[5] Hop products are alleged to be "hops that have been converted into pellets or extract, which are concentrated forms of hops used for the same purposes as hops."
[6] The United States Supreme Court noted that on a motion seeking to enforce arbitration, the court did not consider the effect of an arbitration tribunal's failure to recognize a statutory claim on a party's ability to reinitiate the suit in federal court. Mitsubishi, supra, 105 S.Ct. at 3360 n. 19. Accordingly, this Court will not now consider plaintiff's counsel's reference during argument to a statute of limitations problem if the litigation is dismissed rather than stayed with respect to arbitrable claims.