SECURITY WATCH, INC.,
Plaintiff–Appellant,

v.

SENTINEL SYSTEMS, INC.; American Telephone and Telegraph Company, Defendants–Appellees.

No. 97–6496.

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1999.

Decided May 11, 1999.

Rebecca Adelman (argued and briefed), John Cacciatore, Glassman, Jeter, Edwards & Wade, Memphis, TN, for Plaintiff–Appellant.

Rebecca P. Tuttle (argued and briefed), Steven C. Brammer (briefed), Farris, Mathews, Branan & Hellen, Memphis, TN, for Defendants–Appellees.

Before: JONES, SUHRHEINRICH, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant Security Watch, Inc. ("Security"), a dealer in security systems, brought this action in the Western District of Tennessee against Defendant–Appellee Sentinel Systems, Inc. ("Sentinel"), its distributor, and Defendant–Appellee American Telephone and Telegraph Company ("AT & T"), the manufacturer of the systems. Holding that the Tennessee forum was precluded under the pertinent dealer contracts, the district court dismissed the action. We **AFFIRM IN PART** and **REVERSE IN PART**. We conclude that the district court correctly held that a forum-selection provision of the agreements precluded the prosecution of the action in Tennessee against Sentinel, which was a party to the contracts with Security. We hold that the district court erred, however, in concluding that a dispute-resolution provision first included in the parties' 1994 contract was applicable to disputes arising under earlier contracts and precluded the prosecution in Tennessee of all claims against both defendants. Thus, Security will be permitted to proceed against AT &

T in the Western District of Tennessee on its pre–1994 claims.

## I. FACTS AND PROCEDURAL HISTORY

This commercial dispute involves several parties and several contracts. From at least 1988 through 1994 Security served as a dealer of security systems distributed by Sentinel and manufactured by AT & T. Annual agreements between Security and Sentinel governed the business relationship. AT & T was not a party to these agreements. The 1993 Agreement (and earlier contracts) included a forum-selection provision that confined litigation "involving, arising under, or interpreting" the agreements to certain state or federal courts located in Virginia (the "Forum–Selection Clause"). Joint Appendix ("J.A.") at 52–53 (1993 Agreement ¶ 14). In addition to the Forum–Selection Clause, the 1994 Agreement contained an alternative dispute-resolution provision that required negotiation, mediation, and, in some circumstances, arbitration of disputes (the "ADR Clause").

In 1996 Security sued the defendants in the Western District of Tennessee alleging, inter alia, breach of express and implied warranties.[1] Security alleged that certain products purchased under the dealer contracts were defective. The defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b). The district court granted the motion on two grounds. First, the court held that Security was barred from proceeding against Sentinel in Tennessee by the Forum–Selection Clause of the agreements. Second, the court held that the ADR Clause of the 1994 Agreement was applicable to 1994 and pre–1994 claims against both defendants and also precluded litigation in Tennessee. Security filed a timely notice of appeal. This court's jurisdiction

---

1. Diversity jurisdiction was established pursuant to 28 U.S.C. § 1332. Security is a Tennessee corporation with its principal place of business in that state; Sentinel is a Delaware corporation with its principal place of business in Virginia; and AT & T is a New York corporation with its principal place of business in New Jersey.

over the appeal is a matter of dispute that we will address before proceeding to the merits.

## II. ANALYSIS

### A. Appellate Jurisdiction

The defendants argue that under § 16 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16, this court lacks jurisdiction to hear this appeal. Subject to limited exceptions that are not at issue here, § 16(b) provides that no appeal may be taken from an interlocutory order of the district court compelling arbitration or directing arbitration to proceed under the FAA. For two reasons we conclude that § 16 does not divest this court of jurisdiction in this instance.

■ First, in contrast to the prohibition on appeals of interlocutory orders, § 16(a)(3) permits an appeal to be taken from a final decision with respect to arbitration. This court has held that an order dismissing an action in favor of arbitration is a final order appealable under § 16(a)(3). *See Arnold v. Arnold Corp.,* 920 F.2d 1269, 1275–76 (6th Cir.1990). The present action was dismissed by the district court.

■ Second, even if *Arnold* were not controlling, it cannot be said that this action was disposed of in favor of arbitration. To be sure the district court based its dismissal of Security's action, in part, on the preclusion of the Tennessee forum by the ADR Clause of the 1994 Agreement. That provision requires the parties to negotiate any dispute for forty-five days and then to mediate any unresolved matters in New Jersey. If mediation is not successful, the provision requires the parties to enter into binding arbitration in New Jersey if the amount in controversy is less than $1 million. If the amount in controversy exceeds $1 million, the parties may mutually agree to arbitrate or the aggrieved party may sue in New Jersey. *See* J.A. at 78–79 (1994 Agreement ¶ 13). However, the district court did not determine the amount in controversy and thus did not determine whether arbitration would be required under the agreement if preliminary resolution efforts failed. The district court simply dismissed the action, because in any event the agreement precluded litigation in Tennessee.

The defendants have cited no authority for the proposition that the mere possibility that arbitration will be required under a contractual dispute-resolution process is sufficient to bar an immediate appeal under the FAA. Although it is the policy of the FAA to defer the appeal of an order compelling arbitration, it is not the purpose of that Act, or of any other statute or rule, to defer the appeal of a determination regarding a geographic forum-selection provision. Because it was the geographic forum-selection provision of the ADR Clause rather than the arbitration provision, per se, that provided the grounds for the district court's dismissal of this action, § 16(b) is not applicable to this appeal. Thus, this court has jurisdiction pursuant to 28 U.S.C. § 1291.

### B. The Motion to Dismiss

■ The district court granted the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). The district court held that (1) dismissal of the claims against both defendants was required by the ADR Clause of the 1994 Agreement and (2) dismissal of the claims against Sentinel was dictated by the Forum–Selection Clause included in all of the agreements. We will review the two bases for dismissal sequentially and de novo.[2]

---

2. Neither the parties nor the district court specified the subsection of Fed.R.Civ P. 12(b) that should govern a motion to dismiss based on contractual forum preclusion, and there is some debate among the circuits as to whether dismissal pursuant to Fed.R.Civ.P. 12(b)(1),

12(b)(3), or 12(b)(6) is most appropriate. *See Lipcon v. Underwriters at Lloyd's London,* 148 F.3d 1285, 1289–90 (11th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 851, 142 L.Ed.2d 704 (1999). We need not resolve this question today, however, as it is settled in this

### 1. Dismissal Based on the ADR Clause

The district court held that provisions of the 1994 Agreement required the dismissal of all of Security's claims. On appeal Security does not dispute the dismissal of its claims arising out of the 1994 Agreement. Thus, the specific issue before us is whether the district court erred in holding that the 1994 Agreement was applicable to claims relating to products supplied under earlier contracts.

The district court relied on two clauses of the 1994 Agreement in dismissing pre-1994 claims: ¶ 13, the ADR Clause, and ¶ 19, the merger or integration clause. Paragraph 13 provides that "[t]he parties shall follow these dispute resolution processes in connection with all disputes, controversies or claims ... arising out of or relating to the Products furnished pursuant to this Agreement or acts or omissions of Distributor or AT & T under this Agreement...." J.A. at 78. The "Agreement" referred to in this paragraph is the 1994 Agreement, and thus this provision plainly refers to disputes related to products delivered under the 1994 Agreement. However, the district court determined that, as a result of ¶ 19, the ADR Clause also governs disputes arising under previous agreements. Paragraph 19, titled "Entire Agreement" provides as follows:

> The terms and conditions contained in this Agreement supersede all prior oral or written understanding[s] between the parties, and constitute the entire agreement between them concerning the subject matter of this Agreement. This Agreement shall not be modified or amended except by a writing signed by the party to be charged.

J.A. at 81.

■ We conclude that disputes arising under the pre–1994 contracts are not governed by the ADR Clause of the 1994 Agreement. First, it is clear that ¶ 13 alone does not reach disputes relating to products shipped under earlier agreements. Applicable to disputes "arising out of or relating to the Products furnished" under the 1994 Agreement, this ADR provision is very broad in scope and certainly reaches all claims raised by Security with respect to the 1994 Agreement. See AT&T Corp. v. Vision One Security Sys., 914 F.Supp. 392, 397–98 (S.D.Cal.1995). However, this breadth of scope does not extend over time. Paragraph 12 specifies that the term of the agreement is twelve months, and ¶ 13 does not purport to reach disputes related to pre–1994 agreement products.

■ Second, it is inappropriate to read the ¶ 19 merger clause as superseding prior annual contracts. Merger clauses are routinely incorporated in agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated. A completely integrated agreement must be interpreted on its face, and thus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document. See 2 FARNSWORTH ON CONTRACTS § 7.3 at 215–25.

Ignoring the universally understood purpose of this boilerplate clause, the district court determined that the "subject matter of this Agreement" referred to in ¶ 19 was the entire relationship between the parties and that the 1993 and prior contracts represented "prior ... written understanding[s] between the parties" that were superseded by the 1994 contract.[3]

---

circuit that the enforceability of a forum-selection provision is a matter of law that is reviewed de novo. See Baker v. LeBoeuf, Lamb, Leiby & Macrae, 105 F.3d 1102, 1104 (6th Cir.1997); Shell v. R.W. Sturge, Ltd., 55 F.3d 1227, 1229 (6th Cir.1995). De novo review is particularly appropriate as resolu-

tion of the questions raised in this appeal turns on the interpretation of the contracts. See Lipcon, 148 F.3d at 1290.

3. The district court's interpretation would have been more persuasive had the merger clause referred to "prior agreements" or "pri-

The district court focused on the fact that the dealer agreements were much more than product orders. Rather, these agreements governed all aspects of a multi-faceted relationship between the parties and contemplated a continuing relationship. Distinguishing *Kentucky Fried Chicken Corp. v. Collectramatic, Inc.,* 130 N.H. 680, 547 A.2d 245, 248 (1988), which had held that a similar merger clause was prospective and that the "subject matter" consisted only of products yet to be sold, the district court determined that several of Security's obligations under the 1994 Agreement related to pre–1994 contract sales. For example, Security was required to report unresolved customer complaints.

Although it is true that Security had a number of ongoing reporting and training obligations under the agreements, the contracts here were essentially forward-looking. Each agreement contained monthly performance targets for sales for the coming year. As in *Collectramatic,* the "subject matter" of the 1994 Agreement referred to in ¶ 19 is more properly viewed as the rights and obligations of the parties relating to the 1994 sales program.

The First Circuit has recently addressed the same arguments relating to a similar contract involving AT & T security systems. In an unpublished disposition that court held that an identical "run-of-the-mill integration clause" did not cause a later agreement to supersede prior agreements. *See Choice Security Sys., Inc. v. AT&T Corp.,* No. 97–1774, 1998 WL 153254, at *1 (1st Cir.1998) (unpublished). Although the agreements governed the ongoing relationship between the parties, the terms could "be viewed as imposing current responsibilities." *Id.* Thus, as no other provision of the later agreement even "remotely intimate[d] that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements," the court held that an arbitration provision that first appeared in a 1994 agreement did not apply to disputes relating to pre–1994 products. *Id.*

The conclusion that the 1994 ADR Clause is inapplicable to disputes arising under earlier contracts also is supported by *In re Hops Antitrust Litig.,* 655 F.Supp. 169 (E.D.Mo.), *appeal dismissed,* 832 F.2d 470 (8th Cir.1987). The defendants there also argued that an arbitration clause in a later agreement was applicable to disputes arising under earlier agreements that lacked the clause. The court disagreed noting that each contract was distinct and, significantly, that "[t]he record reflects no agreement by the parties to amend earlier contracts to provide for arbitration of disputes." *Id.* at 172–73. The court did not indicate whether the contract containing the arbitration provision in *Hops* included an integration clause.

We find the logic of *Choice Security Systems* and *In re Hops Antitrust Litigation* persuasive, and the defendants offer no compelling arguments or authority in support of the contrary view. The defendants argue that it would be nonsensical for the parties to commit disputes arising under the 1994 Agreement to arbitration while permitting disputes arising under the earlier agreements to be litigated. But it is equally nonsensical to suggest that Security simply would abandon its established right to litigate disputes arising under the pre–1994 contracts.

The defendants also cite a number of cases in which an arbitration clause in an "umbrella contract" has been held applicable to supplemental contracts that lacked the clause. *See S.A. Mineracao da Trindade–Samitri v. Utah Int'l Inc.,* 576 F.Supp. 566, 573 (S.D.N.Y.1983), *amended by* 579 F.Supp. 1049 (S.D.N.Y.), *and aff'd,* 745 F.2d 190 (2d Cir.1984); *Consumer Concepts, Inc. v. Mego Corp.,* 458 F.Supp. 543, 545 (S.D.N.Y.1978). In these cases, however, disputes arising under the later

or contracts and understandings" rather than to "prior understandings." The latter phrase

suggests something less than a formal agreement or contract.

supplemental contracts were held to be subsumed within the set of disputes that could arise under the umbrella contracts. Given the fact that the arbitration provision in the present case arises in a later contract, much more is needed to infer an intention to apply the provision to previous contracts. *See In re Hops Antitrust Litig.*, 655 F.Supp. at 172–73 (holding that the umbrella/supplemental contract analogy was inapplicable in a case in which an arbitration provision was inserted in a later contract).

Finally, the defendants argue that doubts concerning the scope of arbitrability must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Given the fact that the ambiguity rests in the merger provision rather than the arbitration provision, however, we also must consider the maxim that contract ambiguities are to be construed against the drafter, in this case the defendants. The latter maxim is particularly apt here, as the defendants attempt to reinterpret a standard boilerplate integration provision in order to supersede previous contracts and extend the 1994 ADR Clause to previous time periods. Had the parties intended to apply the new ADR processes to disputes arising under the previous contracts, we believe they would have done so explicitly.[4]

### 2. Dismissal Based on the Forum–Selection Clause

■ Having determined that the district court erred in concluding that disputes arising under the 1993 Agreement and ear-

lier contracts are governed by the ADR Clause of the 1994 Agreement, we turn to the district court's alternative basis for granting the motion to dismiss with respect to Sentinel, i.e., the court's holding that the Forum–Selection Clause of the contracts precluded the prosecution of Security's suit against Sentinel in Tennessee. On this point we are in agreement with the district court.

Paragraph 14 of the 1993 Agreement provides in pertinent part as follows:

> The parties hereby agree that this contract has been made in the Commonwealth of Virginia and that the Circuit Court for the City of Hampton, Virginia, or the United States District Court for the Eastern District of Virginia, Newport News Division, shall be the exclusive forums in which any action in any way involving, arising under, or interpreting this Agreement shall be brought. The parties hereto expressly consent to jurisdiction of those courts over them and agree to the appropriateness of the venue of the courts designated herein.

J.A. at 52–53.[5] Security argues that this clause is unenforceable. We disagree.

■ Although formerly disfavored, forum-selection clauses generally are enforced by modern courts unless enforcement is shown to be unfair or unreasonable. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80 (1988 Revision) ("The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable."); *see also Moses v. Business*

---

4. Pursuant to Federal Rule of Appellate Procedure 28(j) the defendants call this court's attention to a recent case out of the Fourth Circuit, *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566 (4th Cir.1998). There, the court held that an arbitration clause in a contract relating to one Hallmark store operated by the plaintiff was applicable to a dispute relating to the plaintiff's second Hallmark store. *See id.* at 569–71. The arbitration clause there, however, was written to govern any dispute "relating to … *any as-*

*pects of the relationship between Hallmark and Retailer,"* i.e., the plaintiff. *See id.* at 568 (emphasis in original). Because the arbitration clause in the present case cannot be read to extend to the "relationship" between the parties, *Cara's Notions* is inapposite.

5. Paragraph 16 of the 1994 Agreement is identical. *See* J.A. at 79–80. Apparently, the pre–1993 contracts included the same provision.

*Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991).

■ At least with respect to federal courts sitting in admiralty jurisdiction, the Supreme Court settled the forum-selection clause enforceability question in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). There, the Court held that forum-selection "clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. 1907. Although several other circuits have held that the rule of *Zapata* is applicable to diversity cases,[6] this court has not decided whether a federal court sitting in diversity jurisdiction evaluates the enforceability of a forum-selection clause under the rule of *Zapata* or under the applicable state rule.[7] We need not resolve that matter here, however, as Tennessee law is consistent with the rule of *Zapata.* *See Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.*, 650 S.W.2d 378, 380 (Tenn.1983) (courts of Tennessee "should enforce [a forum-selection] clause unless the party opposing enforcement demonstrates that it would be unfair and inequitable to do so").

The Restatement discusses three situations in which a court might conclude that a forum-selection clause was unenforceable. The provision may be unenforceable if (1) it was "obtained by fraud, duress, the abuse of economic power or other unconscionable means," (2) the designated forum "would be closed to the suit or would not handle it effectively or fairly," or (3) the designated forum "would be so seriously an inconvenient forum that to require the plaintiff to bring suit there would be unjust." RESTATEMENT § 80 cmt. c. Security has not suggested that the Virginia forum would be unavailable or would be seriously inconvenient. Rather, Security argues that the circumstances of contract formation were so unfair as to render the provision unenforceable.

Essentially, Security asserts that the dealer agreements are adhesion contracts. Security alleges that it did not freely agree to the forum-selection provision and that the clause was not negotiable. However, Security offers no evidence that the contract terms were non-negotiable or that the manufacturer or distributor possessed inordinate bargaining power. These agreements were negotiated between sophisticated business entities. In the absence of any evidence of overreaching on the part of the defendants, the district court was fully justified in determining that the Forum–Selection Clause was enforceable between Sentinel and Security.[8]

■ Although the district court concluded that the Forum–Selection Clause precluded Security from proceeding against Sentinel in Tennessee, the court specifically determined that this clause provided "no contractual basis to compel Security to file

---

6. *See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 n. 10 (2d Cir.1998); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995); *International Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir.1996) (following the Second and Ninth Circuits in adopting the *Zapata* rule for diversity cases, but noting that the Fourth Circuit looks to state law).

7. *See Baker,* 105 F.3d at 1105 (declining to resolve the issue as state and federal law were aligned).

8. Security complains that AT & T insulated itself from the agreements, but that claim has no bearing on the determination that Security is precluded from proceeding against Sentinel in Tennessee. Security also notes the conflict in the 1994 Agreement between the Forum–Selection Clause and the forum provisions contained within the ADR Clause. There is no conflict as to the 1993 Agreement, however, and, because Security does not contest the district court's determination that the ADR Clause of the 1994 Agreement precludes the Tennessee action against both defendants with respect to 1994 claims, this court need not address the potential conflict in the 1994 Agreement.

its claim against AT & T in Virginia." J.A. at 248 (Order at 2). In their submissions to the district court, the defendants asserted that AT & T was a third-party beneficiary of the dealer agreements and at least implied that the Forum–Selection Clause was applicable to Security's claims against AT & T. On appeal Security argues that as a non-party to the agreements AT & T has no right to invoke the Forum–Selection Clause of the agreements. The defendants did not address this point in their appellate brief, and we consider the issue to be abandoned by the defendants. *See Enertech Elec., Inc. v. Mahoning County Comm'rs,* 85 F.3d 257, 259 (6th Cir.1996); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 284 (6th Cir.1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).

## III. CONCLUSION

For the foregoing reasons we **VACATE** the district court's order dismissing Security's action against AT & T on claims relating to pre–1994 dealer contracts but **AFFIRM** the order with respect to the dismissal of all claims against Sentinel.