588 S.E.2d 136

The VESTRY AND CHURCH WARDENS OF the CHURCH OF the HOLY CROSS, Respondent,

v.

ORKIN EXTERMINATING COMPANY, INC., Terminix Service Company, Inc., Terminix International, Inc. d/b/a Terminix of Delaware Corporation, Cuttino Builders, Inc. and Henry D. Boykin, A.I.A., architect, Defendants,

of whom Orkin Exterminating Company, Inc. and Terminix Service Company, Inc. and Terminix International, Inc., d/b/a Terminix of Delaware Corporation are the Appellants.

No. 3679.

Court of Appeals of South Carolina.

Heard June 10, 2003.

Decided Sept. 22, 2003.

Rehearing Denied Nov. 20, 2003.

204

Clinch H. Belser, Jr., of Columbia, for Appellant Terminix Service Co.

J. Rutledge Young, III and Tom Wills, of Charleston, R. Wade Marionneaux and Voris E. Johnson, Jr., of Atlanta, GA, all for Appellant Orkin Exterminating, Co.

Thomas S. Tisdale, Stephen Brown, and Stephen P. Groves, of Charleston, for Respondent.

HEARN, C.J.:

Orkin Exterminating Company and Terminix Service Company both appeal from the trial court's order denying their motions to compel arbitration. We affirm with respect to Orkin and reverse with respect Terminix.

## FACTS

This case arises from a lawsuit filed by the Church of the Holy Cross after it discovered termite damage within the church building.[1] In 1975, the church contracted with Terminix for the installation of a termite protection system within the church building. To this end, Terminix drilled holes through the church's interior concrete floor and installed pipes into which pesticide could be injected. This contract did not contain an arbitration clause. In June 2000, after the church discovered termite damage, the church entered into a new contract with Terminix for a baiting system to be used outside of the church building. This 2000 contract contained an arbitration clause.

From 1976 until 1985, the church contracted with Orkin for the inspection and treatment of termites within the church building.[2] When treating for termites, Orkin utilized the system installed by Terminix. Orkin terminated this service contract in 1985, after the church inadvertently failed to make two annual payments. In 1987, the church entered into a new contract with Orkin for the continued inspection and treatment of the church building. This contract also did not contain an arbitration clause. In 1998, the Church and Orkin entered into a separate contract for the inspection and treat-

---

1. There are two buildings on the Church property: the church building and a separate parish hall.

2. None of the parties can locate a copy of this first contract between the Church and Orkin, although its existence is not contested.

ment of the parish hall.[3] This contract contained an arbitration clause; however, it did not incorporate or reference the 1987 contract for Orkin's treatment of the church building.

After termites were discovered in the church building, the church sued both Orkin and Terminix for damages.[4] Orkin and Terminix each filed a motion to compel arbitration. Orkin argued that the arbitration clause in its 1998 contract with the church is broad enough to compel arbitration of disputes arising from the prior contracts. Terminix raised the same argument with respect to its 2000 contract with the church.

The trial court denied both Orkin's and Terminix's motions to compel arbitration. The trial court held there was nothing in the 1998 Orkin contract or the 2000 Terminix contract signifying a retroactive effect. Thus, the trial court held arbitration was not required for causes of action arising out of the prior contracts.

## STANDARD OF REVIEW

Whether a claim is subject to arbitration is an issue for judicial determination, unless the parties have agreed otherwise. *Stokes v. Metro. Life Ins. Co.*, 351 S.C. 606, 609, 571 S.E.2d 711, 713 (Ct.App.2002). "Determinations of arbitrability are subject to *de novo* review." *Id.*

## LAW/ANALYSIS

In South Carolina, the test for determining whether a particular issue is subject to arbitration is articulated in *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 553 S.E.2d 110 (2001). "The policy of the United States and South Carolina is to favor arbitration of disputes." *Id.* at 596, 553 S.E.2d at 118. "Arbitration rests on the agreement of the parties, and the range of issues that can be arbitrated is restricted by the terms of the agreement." *Id.* at 596–97, 553 S.E.2d at 118.

---

3. The parish hall is referred to as the "parsonage" in the 1998 Orkin contract.

4. The Church also filed suit against both the architect and the contractor responsible for the restoration of the church building. However, the circuit court granted these defendants' motions to compel arbitration, and they are not involved in this appeal.

"Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Id.* at 597, 553 S.E.2d at 118. To decide whether an arbitration agreement covers a particular dispute, the court must determine whether the factual allegations underlying the claim fall within the scope of the agreement, irrespective of the label given to the cause of action. *Id.* When interpreting arbitration agreements within the scope of the FAA,[5] due regard must be given to the federal policy in favor of arbitration, and any ambiguity in the scope of the arbitration clause must be resolved in favor of arbitration. *Stokes,* 351 S.C. at 612, 571 S.E.2d at 714. "[U]nless the court can say with positive assurance that arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered." *Zabinski,* 346 S.C. at 597, 553 S.E.2d at 118. *See also Towles v. United HealthCare Corp.,* 338 S.C. 29, 41–42, 524 S.E.2d 839, 846 (Ct.App.1999) (stating a motion to compel arbitration should be denied only where the arbitration clause is not susceptible of any interpretation that would cover the asserted claim).

The issue before this court is whether the church's claims against Orkin and Terminix fall within the scope of each party's arbitration clause. In this case, the claims asserted by the church arose prior to the execution of the contracts which contain the arbitration clause. It is therefore necessary for this court to determine whether the arbitration clauses in Orkin's and Terminix's contracts were sufficiently broad so as to embrace disputes arising under prior contracts. Because this issue has received little discussion in South Carolina, we look to the federal courts for instruction as to the scope of the clauses at issue in this case. It is necessary to understand fully the scope of the clauses in order to effectively determine whether either is capable of an interpretation which covers the claims asserted by the church.

 Courts have retroactively applied arbitration clauses to disputes arising under prior contracts, but in doing so, the courts have generally found the existence of a broadly worded clause which governed the overall relationship between the

---

5. The applicability of the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.,* is not in dispute.

parties.[6] *See, e.g., Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 568–71 (4th Cir.1998) (finding a broad arbitration clause which called for arbitration of "[a]ny controversy or claim arising out of or relating to ... any aspects of the relationship" established that the clause was intended to apply to all conflicts between the parties and not only to conflicts arising under the specific contract containing the arbitration clause); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 331–33 (10th Cir.1993) (holding the parties were required to submit their claims to arbitration where the dispute predated the execution of the arbitration clause because the clause provided for the arbitration of "any controversy ... arising out of your business or this agreement"); *Rand Bond of N. Am., Inc. v. Saul Stone & Co.*, 726 F.Supp. 684, 687–88 (N.D.Ill.1989) (finding arbitrable a dispute arising prior to the execution of the arbitration agreement where the arbitration clause provided that the agreement extended to "[a]ny controversy or claim arising out of or relating to your accounts"); *B.G. Balmer & Co. v. United States Fid. & Guar. Co.*, 1998 WL 764669 (E.D.Pa.1998) (noting that where an arbitration clause speaks in terms of relationships and not timing, it applies to disputes even if the claim arose before the agreement was executed). The common theme underlying these cases is that the parties expressly agreed that *all* controversies between them, not just those appurtenant to the contract containing the clause, were to be submitted to arbitration. That being the case, the source of the claim or injury is not dispositive, for the parties have manifested an intention to arbitrate all of their disputes arising from their business relations, not just those arising under a particular contract.

Where the language of the arbitration clause is not as broad, courts have refused to mandate the arbitration of

---

**6.** An arbitration provision will also cover disputes arising under prior contracts where the clause contains retroactive, time-specific language mandating its application to previously executed contracts. *See Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Kirton*, 719 So.2d 201, 203 (Ala.1998) (holding an "arbitration agreement expressly extended to all controversies relating to the parties' transactions and agreements, 'whether entered into prior [to], on, or subsequent to the date hereof' clearly indicated that disputes related to prior transactions were to be arbitrated"). Here, neither contract contains retroactive language.

disputes unrelated to the contract containing the clause. In *Sec. Watch, Inc. v. Sentinel Sys. Inc.*, 176 F.3d 369, 372 (6th Cir.1999), the court found that a clause requiring arbitration of "all disputes, controversies, or claims ... arising out of or relating to the Products furnished pursuant to this Agreement or acts or omissions of Distributor or AT & T under this Agreement ..." could not be used to compel arbitration of disputes relating to products shipped under prior agreements. The court noted that while the scope of the clause was very broad and would govern all disputes involving the contract in which it was contained, it did not extend over time to affect disputes arising out of prior contracts. *Id.*

In *In re Hops Antitrust Litig.*, 655 F.Supp. 169, 172–73 (E.D.Mo.1987), the court considered whether an arbitration agreement applied to disputes arising out of transactions related to separate agreements previously executed between the parties. The plaintiff asserted claims against the defendant arising out of numerous purchase agreements for the sale of hops. Later contracts between the parties contained an arbitration clause stating that " 'any dispute arising out of or relating to this agreement, including its interpretation, validity, scope and enforceability, shall be resolved exclusively and finally by arbitration....' " *Id.* at 170. The court held this language did not compel arbitration of disputes arising under prior contracts, finding each contract to be a separate and discreet transaction between the parties for the sale and purchase of hops. *Id.* at 172. The court stated: "The record reflects no agreement by the parties to amend earlier contracts to provide for arbitration of disputes [arising under those contracts]...." *Id.* at 173.

We derive from these cases that the mere fact that an arbitration clause might apply to matters beyond the express scope of the underlying contract does not alone imply that the clause should apply to every dispute between the parties. For example, a clause compelling arbitration for any claim "arising out of or relating to this agreement" may cover disputes outside the agreement, but only if those disputes relate to the subject matter of that agreement. *See Zabinski*, 346 S.C. at 598, 553 S.E.2d at 119 ("A broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists be-

tween the asserted claims and the contract in which the arbitration clause is contained."). On the other hand, if the clause contains language compelling arbitration of any dispute arising out of the relationship of the parties, it does not matter whether the particular claim relates to the contract containing the clause; it matters only that the claim concerns the relationship of the parties. *See, e.g., Cara's Notions,* 140 F.3d at 568–71. Under *Zabinski,* such a clause would have the broadest scope because it could be interpreted to apply to every dispute between the parties.

### A. Orkin's appeal

 The pertinent language in the arbitration provision of the 1998 Orkin contract is as follows:

ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SERVICES PERFORMED UNDER THIS AGREEMENT OR TORT BASED CLAIMS FOR PERSONAL OR BODILY INJURY OR DAMAGE TO REAL OR PERSONAL PROPERTY SHALL BE FINALLY RESOLVED BY ARBITRATION ADMINISTERED UNDER THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION.

Orkin argues the arbitration clause applies to claims for damage to real property, and thus applies to this dispute as a result of the church's allegation of damages to the church building. We disagree.

We do not construe Orkin's arbitration clause so broadly as to encompass any and all disputes arising out of the relationship of the parties. *See, e.g., Cara's Notions,* 140 F.3d at 568–71; *Zink,* 13 F.3d at 331–33; *Rand Bond,* 726 F.Supp. at 687–88. Rather, we interpret this clause as applying only to disputes arising out of or relating to the agreement in which it is contained. Accordingly, if arbitration is to be compelled, it must be found that "a 'significant relationship' exists between the [church's] claims and the contract in which the arbitration clause is contained." *Zabinski,* 346 S.C. at 598, 553 S.E.2d at 119.

At the time the church and Orkin entered into the 1998 contract, the church had not yet discovered the termite dam-

age, which forms the basis of its claims. Accordingly, the church could not have intended to submit to arbitration specific claims for which it had no knowledge, unless the church intended to arbitrate every claim of this nature. We recognize the broad policy in favor of arbitration; however, we do not broadly construe Orkin's arbitration clause as applying to every incident of property damage, irrespective of the time in which the claim arose or the property upon which the damage was suffered. Even assuming, *arguendo*, that the clause may be construed to apply to property which is not thé subject of the 1998 contract, the words chosen by Orkin in no way evince an intention to apply the clause to claims which had accrued at a time prior to the execution of the 1998 contract. Although the arbitration clause does not expressly limit its application to the parish hall, it contains no language expanding its application to other properties either. As was noted in *Hendrick v. Brown & Root, Inc.*, 50 F.Supp.2d 527, 535 (E.D.Va. 1999):

> [T]he supreme court has never held that an intent to arbitrate can be found from the absence of contractual language evincing an intent to arbitrate a particular kind of dispute. Rather, the court has held that only doubtful interpretations of contractual language respecting the scope of the agreement to arbitrate certain kinds of disputes are to be resolved in favor of arbitration. To convert that principal into a rule that a [party] may insulate itself from pre-existing claims by failing to say so in explicit terms is a fundamental distortion of the principle.

We find no correlation between the factual allegations underlying the church's complaint and the subject matter of the 1998 contract, and thus we hold the church's claims do not fall within the scope of Orkin's arbitration clause. The terms chosen by Orkin to define the scope of its arbitration agreement are wholly ineffective to broaden its application to pre-existing claims involving unrelated real property. Accordingly, we hold the trial judge properly denied Orkin's motion to compel arbitration.

## B. Terminix's appeal

Terminix argues that, because the arbitration clause in the 2000 contract required arbitration for all disputes

between the parties, the trial court erred in denying its motion to compel arbitration.

The pertinent language in the arbitration provision in the 2000 Terminix contract is as follows:

The [Church] and Terminix agree that all matters in dispute between them, including but not limited to (i) any controversy or claim between them arising out of or relating to this Agreement, (ii) any wood destroying insect report with respect to the described property or (iii) the described property in any way, in any such case whether by virtue of contract, tort or otherwise, shall be settled exclusively by arbitration.

Applying *Zabinski,* we look to the factual allegations of the church's claim against Terminix to determine whether there is a substantial relationship of the allegations to the subject matter of the 2000 contract. The church contends that there is no relation between the dispute and the 2000 contract because the dispute concerns defective services to the inside of the church building while the 2000 contract was for the installation of a termite baiting system in the ground on the outside of the church building. We are not persuaded by this distinction. Whether the treatment was to the inside of the building or to the earth outside the building, the common purpose was the prevention of termite infestations in the building structure. At the hearing on the motion to compel arbitration, counsel for the church stated the purpose of the 2000 contract was as follows:

[T]he church called Terminix in the year 2000 and said we have got a grand problem out here. We've got termites that have eaten up the church. We need to get them stopped. So Terminix comes out, enters a separate contract[ ] . . . to [install] these bait stations. . . . And that was solely for the purpose of mitigating the damage that had been by the termites coming in, inside the church.

It is clear from these statements that the 2000 contract was executed as a direct result of the damage caused by Terminix's alleged failure to perform under its prior contract. Therefore, we find the church's current allegations against Terminix substantially relate to the subject matter of the 2000 contract considering the 2000 contract concerns the treatment

(albeit by different methods) of the same building in an effort to mitigate the very damages complained of in the present dispute. The church was aware of the termite damage (and thus the existence of a cause of action against Terminix) at the time the church executed the contract containing the arbitration clause. In light of the purpose for which the 2000 contract was entered, we cannot find that the claims at issue in this case were not within the parties' contemplation at the time the contract was executed. Moreover, the express terms of the clause provide that *"all matters in dispute* between [the parties] ... shall be settled exclusively by arbitration." This language is very broad, and it is more akin to the language generally held to reflect an intention to apply to matters arising out of the relationship of the parties. The fact that the dispute accrued prior to the execution of the 2000 contract is not dispositive where, as here, the terms of the agreement are susceptible to an interpretation which covers any dispute existing between the parties. *See Zabinski,* 346 S.C. at 597, 553 S.E.2d at 118 (stating that where the clause is capable of an interpretation that covers the dispute, arbitration should be ordered); *Towles,* 338 S.C. at 41–42, 524 S.E.2d at 846 (stating a motion to compel arbitration should be denied only where the arbitration clause is not susceptible to any interpretation that would cover the asserted claim). Because we conclude the arbitration clause is susceptible to an interpretation which brings within its broad scope the claims asserted by the church, we are constrained to find the trial court erred in denying Terminix's motion to compel arbitration of those claims.

## CONCLUSION

Because the scope of Orkin's 1998 arbitration clause does not encompass the church's claims, which arose under prior, unrelated contracts, we affirm the trial court's denial of Orkin's motion to compel arbitration. Terminix's arbitration agreement is much broader, however, and we hold its clause is susceptible to an interpretation that covers the claims asserted by the church. Accordingly, we reverse the trial court's decision to deny Terminix's motion to compel arbitration.

**AFFIRMED in Part and REVERSED in Part.**

CONNOR and STILWELL, JJ., concur.