611 S.E.2d 305

Vicki F. CHASSEREAU, Respondent,

v.

GLOBAL–SUN POOLS, INC. and Ken Darwin, Appellants.

No. 3947.

Court of Appeals of South Carolina.

Heard Jan. 11, 2005.

Decided Feb. 22, 2005.

Rehearing Denied April 21, 2005.

Michael H. Montgomery and Frank S. Potts, both of Columbia, for Appellants.

John E. Parker, of Hampton, for Respondent.

GOOLSBY, J.:

Global Sun–Pools, Inc. and Ken Darwin appeal from the circuit court's order denying their motion to compel arbitration. We affirm.

## FACTS

On April 19, 2003, Vicki Chassereau and Global–Sun Pools signed a contract for the construction of an aboveground pool at Chassereau's residence in Varnville, South Carolina. The purchase price was $6,765.00. The contract contained an arbitration provision, more fully described below, that requires any arbitrable dispute to be conducted not in Varnville, South Carolina, but in Carson City, Nevada. At the same time, Chassereau signed an installment sales contract to finance the transaction.

Shortly after Global–Sun Pools completed construction, Chassereau began experiencing problems with the pool. She requested a part from Global–Sun Pools so the pool would function properly. After Global–Sun Pools failed either to replace the part or to repair the pool, Chassereau stopped making payments on the pool.

On September 18, 2003, Chassereau filed a complaint against the appellants alleging that, after she stopped making payments, Ken Darwin and other employees of Global–Sun Pools made a series of harassing and intimidating telephone calls to her workplace, Harper Skilled Nursing Facility. Chassereau asserted Darwin and the other employees left "messages disclosing [her] private and personal finances to her co-employees" and "made false and defamatory statements about [her] during their conversations with [her] co-employees and supervisor." Chassereau specifically alleged that Darwin "falsely and with malice defamed [her] by accus-

ing her of dishonesty" in conversations with her supervisor, co-employees, and relatives. Darwin also allegedly "made numerous [tele]phone calls" to Chassereau "in an effort to intimidate and harass her" and made harassing telephone calls to Chassereau's relatives. Chassereau asserted the calls continued despite her repeated requests that the harassment stop and her supervisor's request that the calls to their place of employment cease.

In her complaint, Chassereau asserted causes of action for (1) defamation; (2) violation of South Carolina law prohibiting unlawful use of a telephone, S.C.Code Ann. § 16–17–430 (2003)[1]; and (3) intentional infliction of emotional distress.

The appellants filed a motion to stay and to compel arbitration, asserting clauses contained in the construction contract and the installment sales contract require arbitration. After a hearing, the circuit court denied the motion, finding "[t]he complaint is based upon tortious conduct of the employees of [Global–Sun Pools] unrelated to the contract" and "the allegations of the complaint do not arise out of nor do they relate to the contract[.]" This appeal followed.

## STANDARD OF REVIEW

The question whether a claim is subject to arbitration is a matter for judicial determination, unless the parties have provided otherwise.[2] Appeal from the denial of a motion to compel arbitration is subject to de novo review.[3]

---

1. This statute makes it a misdemeanor to use a telephone to make harassing, intimidating, threatening, or obscene phone calls. No issue is before us as to whether this statute creates a private right of action. *See, e.g., Whitlaw v. Kroger Co.,* 306 S.C. 51, 55, 410 S.E.2d 251, 253 (1991) (holding statutory prohibitions on selling alcohol to a person under the age of twenty-one create a private right of action if the plaintiff can establish negligence per se and "that violation of the statute[s] was causally linked, both in fact and proximately, to the injury").

2. *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 553 S.E.2d 110 (2001).

3. *Thornton v. Trident Med. Ctr.,* 357 S.C. 91, 592 S.E.2d 50 (Ct.App. 2003); *Rich v. Walsh,* 357 S.C. 64, 590 S.E.2d 506 (Ct.App.2003).

## LAW/ANALYSIS

The appellants contend the circuit court erred in refusing to stay the legal action and to compel arbitration of Chassereau's claims because the contracts mandate arbitration and the claims are so interwoven with the contracts that the claims could not be maintained separately.

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute that the party has not agreed to submit.[4] "Arbitration rests on the agreement of the parties, and the range of issues that can be arbitrated is restricted by the terms of the agreement."[5]

"To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim."[6] "Any doubts concerning the scope of arbitration should be resolved in favor of arbitration."[7]

In the current appeal, the parties' construction contract contains an arbitration provision that, because of its length and format, taxes the eyes. It states in pertinent part:

SECTION G) BINDING ARBITRATION AGREEMENT: ANY DISPUTES ARISING IN ANY MANNER RELATING TO THIS AGREEMENT THAT CANNOT BE RESOLVED BY NEGOTIATION BETWEEN THE PARTIES SHALL BE SUBJECTED TO MANDATORY, EXCLUSIVE AND BINDING ARBITRATION IN CARSON CITY, NEVADA.... THE SOLE AND EXCLUSIVE REMEDY OF THE PURCHASER AND THE OBLIGATION OF THE DEALER FOR THE MATTERS SET FORTH HEREIN WHETHER ON WARRANTY, CONTRACT, NEGLIGENCE OR STRICT LIABILITY, IS THE REPAIR OF THE DEFECT. THE DEALER

---

4. *Zabinski,* 346 S.C. at 596, 553 S.E.2d at 118.

5. *Id.* at 596–97, 553 S.E.2d at 118.

6. *South Carolina Pub. Serv. Auth. v. Great W. Coal (Ky.), Inc.,* 312 S.C. 559, 563, 437 S.E.2d 22, 25 (1993).

7. *Id.* at 564, 437 S.E.2d at 25.

SHALL IN NO WAY BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES.... THE COURT SHALL DECIDE WHETHER AN AGREEMENT TO ARBITRATE EXISTS OR A CONTROVERSY IS SUBJECT TO ANY AGREEMENT TO ARBITRATE.[8]

The language at issue here is the phrase "any disputes arising in any manner relating to this agreement."

We recently held that "a clause compelling arbitration for any claim 'arising out of or relating to this agreement' may cover disputes outside the agreement, but only if those disputes relate to the subject matter of that agreement." [9] We observed that, the mere fact that an arbitration clause could apply to matters beyond the express scope of the underlying contract did not imply that arbitration would be required for every dispute between the parties.[10] We distinguished this language from clauses compelling arbitration of any matter arising out of the "relationship of the parties." In the latter case, it would not matter whether a claim related to a contract containing an arbitration clause or not.[11] Rather, the only question would be whether the claim concerned the relationship of the parties.[12]

Our supreme court has held that "[a] broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." [13] The court noted the following test has been used in some jurisdictions to determine whether a particular tort claim falls within the scope of an agreement to arbitrate:

---

8. The financing statement also references an arbitration clause, but it was not relied upon in the circuit court's order.

9. *Vestry and Church Wardens of Church of Holy Cross v. Orkin Exterminating Co.*, 356 S.C. 202, 209, 588 S.E.2d 136, 140 (Ct.App.2003), *cert. denied,* (S.C. Oct. 6, 2004).

10. *Id.*

11. *Id.* at 210, 588 S.E.2d at 140.

12. *Id.*

13. *Zabinski,* 346 S.C. at 598, 553 S.E.2d at 119.

The test is based on a determination whether the particular tort claim is so interwoven with the contract that it could not stand alone. If the tort and contract claims are so interwoven, both are arbitrable. On the other hand, if the tort claim is completely independent of the contract and could be maintained without reference to the contract, the tort claim is not arbitrable.[14]

In our opinion, Chassereau's claims for defamation, unlawful use of a telephone, and intentional infliction of emotional distress cannot be considered claims "arising out of" the contract [15] any more than would a claim that Darwin and other employees of Global–Sun Pools had gone to Chassereau's workplace and verbally or physically attacked her.

Not only do Chassereau's claims involve actions taken by the appellants that do not arise out of the contract between Chassereau and Global–Sun Pools, the claims can also be proved independently of that contract. Being called "dishonest" to one's supervisor, co-workers, and relatives, harassed by repeated phone calls, and subjected to intentional infliction of emotional distress, as alleged in the complaint, constitutes tortious behavior that the parties, it seems to us, could not have reasonably foreseen and for which we seriously doubt they intended to provide a limited means of redress.[16]

---

**14.** *Id.* at 597 n. 4, 553 S.E.2d at 119 n. 4.

**15.** We note that the arbitration provision in this case specifies that arbitration is the exclusive remedy for matters whether "warranty, contract, *negligence* or strict liability" and it limits any remedy to repair of the defect. [Emphasis added.] Negligence, while itself a tort, does not encompass all torts, particularly intentional torts such as defamation and intentional infliction of emotional distress alleged by Chassereau. Moreover, as noted above, unlawful use of a telephone is a misdemeanor.

**16.** *Fuller v. Guthrie,* 565 F.2d 259 (2d Cir.1977). *Fuller* involved an action brought by a concert promoter against a performer and others to recover damages for breach of contract and, as here, slander. The arbitration clause in the performer's contract "provide[d] that 'the parties will submit every claim, dispute, controversy, or difference involving the musical services arising out of or connected with' the contract to" arbitration. *Id.* at 260. The United States Court of Appeals for the Second Circuit found this clause did not require arbitration of the slander claim because "the agreement to arbitrate was undoubtedly intended to cover disputes arising from the character

Based on the foregoing, we agree with the circuit court's finding that "[t]he complaint is based upon tortious conduct of the employees of [Global–Sun Pools] unrelated to the contract" and "the allegations of the complaint do not arise out of nor do they relate to the contract[.]" The circuit court, therefore, did not err in denying the motion to compel arbitration.

**AFFIRMED.**

HEARN, C.J., and WILLIAMS, J., concur.

---

of Guthrie's performance and his payment for it, [but] it is highly unlikely that the parties could have foreseen, no less intended, to provide a forum for *wholly unexpected tortious behavior." Id.* at 261 (emphasis added).