DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

MID-AMERICA APARTMENT COMMUNITIES, INC.,
and ROBIN JIMINEZ,

Appellants,

v.

ALEJANDRA GONZALEZ,

Appellee.

No. 2D2024-0780

_____

March 14, 2025

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Hillsborough County; Robert A. Bauman, Judge.

Ezequiel Lugo of Banker Lopez Gassler P.A., Tampa, for Appellants.

Benjamin James Stevenson of Stevenson Legal, PLLC, Pensacola Beach, for Appellee.

VILLANTI, Judge.

Mid-America Apartment Communities, Inc., and Robin Jiminez (collectively, Mid-America), the defendants in Alejandra Gonzalez's premises liability lawsuit, appeal from a nonfinal order denying their motion to compel arbitration. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(B); Fla. R. App. P. 9.130(a)(3)(I). Because Ms. Gonzalez's claim is encompassed by the language of the arbitration clause at issue in this case, we reverse.

The facts are straightforward. Ms. Gonzalez rented an apartment in an apartment building managed by Mid-America. Ms. Gonzalez's complaint alleged that while walking in a common area, she stepped on an in-ground utility box with a defective cover, causing her to fall to the ground, resulting in injuries. Mid-America moved to compel arbitration under the provisions of the lease contract entered into by Ms. Gonzalez. The trial court denied the motion.

## Legal Framework

This appeal involves the interpretation of an arbitration provision in an apartment lease contract. We review this issue de novo. *See Venn Therapeutics, LLC v. CAC Pharma Invs., LLC*, 382 So. 3d 6, 11 (Fla. 2d DCA 2024) ("The standard of review we use when examining a trial court's construction of an arbitration agreement as well as its application of the law to the facts is de novo." (citing *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 366 (Fla. 2d DCA 2022))).

"[T]here are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). "The general rule is that where an arbitration agreement exists between the parties, arbitration is required only of those controversies or disputes which the parties have agreed to submit to arbitration." *Miller v. Roberts*, 682 So. 2d 691, 692 (Fla. 5th DCA 1996) (first citing *Pacemaker Corp. v. Euster*, 357 So. 2d 208 (Fla. 3d DCA 1978); then citing *Painewebber, Inc. v. Hess*, 497 So. 2d 1323 (Fla. 3d DCA 1986); then citing *All Am. Semiconductor, Inc. v. Unisys Corp.*, 637 So. 2d 59 (Fla. 3d DCA 1994); and then citing *Fla. Dep't of Ins. v. World Re, Inc.*, 615 So. 2d 267 (Fla.

2

5th DCA 1993)).  When two contracting parties disagree as to whether a particular dispute must be submitted to arbitration, our courts first look at whether the language of the arbitration clause is "narrow" or "broad."  Generally, clauses requiring arbitration of controversies "under" or "arising out of" the contract have been interpreted narrowly, restricting arbitration to claims "relating to the interpretation of the contract and matter of performance."  *See Seifert*, 750 So. 2d at 636-37 (quoting *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Circ. 1961)).  "On the other hand, the phrase 'arising out of or relating to' the contract has been interpreted broadly to encompass virtually all disputes between the contracting parties, including related tort claims."  *Id.* at 637.  "Broad" arbitration clauses are reviewed to determine whether a "significant relationship" and a "contractual nexus" exist between the dispute and the arbitration clause in the contract.  *See id.* at 637-38.

Finally, we observe that "Florida public policy favors arbitration of disputes and thus 'courts should resolve doubts concerning the scope of such agreements in favor of arbitration.' "  *UATP Mgmt., LLC v. Barnes*, 320 So. 3d 851, 857 (Fla. 2d DCA 2021) (quoting *Austin Com., L.P. v. L.M.C.C. Specialty Contractors, Inc.*, 268 So. 3d 215, 219 (Fla. 2d DCA 2019)).

**The Arbitration Clause at Issue in This Case**

The arbitration clause in the contract at issue in this case is very broad.  That clause states, in pertinent part:

> 24.2  Agreement to arbitrate disputes: . . . **ALL CLAIMS THAT ARISE BETWEEN YOU AND LANDLORD WILL BE RESOLVED THROUGH BINDING ARBITRATION . . . . YOU AND LANDLORD AGREE AND UNDERSTAND THAT WE MUTUALLY CHOOSE BINDING ARBITRATION INSTEAD OF LITIGATION TO RESOLVE ALL CLAIMS.  THIS MEANS**

3

**THAT UNLESS YOU OPT OUT OF THIS SECTION 24.2 (AGREEMENT TO ARBITRATE DISPUTES), NEITHER YOU NOR LANDLORD WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT EXCEPT TO THE EXTENT PROVIDED HEREIN WITH RESPECT TO EXCLUDED CLAIMS.  OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION.**

Section 24.1 of the contract ("Definitions") defines "claim" as

> any claim, dispute, action, proceeding, cause of action or controversy of every kind and nature, whether arising in contract, <u>tort (including, but not limited to, personal injury,</u> death or damage to property) or otherwise (whether for damages or for injunctive or other legal, equitable or other relief, or whether arising under federal, state, local, common, statutory, regulatory, constitutional or other law) whether now existing or arising in the future between You and Landlord <u>arising from or relating to</u> Your Lease or any prior lease between the parties, the Apartment, the Property, <u>use of Your Apartment and/or common areas</u>, as well as the relationship resulting from this Lease.

(Emphasis added.)  Distilling this definition of "claim" to terms relevant to this case, the contract at issue requires arbitration when a tenant asserts a personal injury claim "arising from or related to" the use of the common areas.

### The Trial Court's Order

In the order on appeal, the trial court set forth two main reasons for its denial of Mid-America's motion to compel arbitration.  First, the court found that "the type of claims made in Plaintiff's Complaint could not have been contemplated by all parties at the time the lease was signed."  This is consistent with the trial court's observations at the hearing, in which it stated, "I struggle with [the] issue of an independent tort being bound by the lease agreement" and that it seemed problematic that one could enter into a lease agreement containing an arbitration

4

clause in which the lessee forewent "any possible tort claim." Second, the trial court found "that Plaintiff's Complaint relates to duties independent from the interpretation, performance, or breach of the provisions of [the] lease agreement." The trial court thus concluded that "the arbitration provision does not control this matter." With respect to its second finding, the trial court cited *Seifert*, *Dewees v. Johnson*, 329 So. 3d 765, 766-67 (Fla. 4th DCA 2021), and *Terminix International Co. v. Michaels*, 668 So. 2d 1013, 1015 (Fla. 4th DCA 1996).

## Arbitrability of Claim

On appeal, Ms. Gonzalez argues, "Because her claim does not emanate from an inimitable contractual duty, but instead from Mid-America's common law duty to members of the public, her claim does not bear a significant relationship to the lease to compel arbitration." We disagree. The arbitration clause in this case unambiguously and expressly requires claims of personal injury alleged to have been sustained in a common area to be subjected to arbitration. Under these circumstances, the significant relationship test does not apply.

The Fourth District recently examined this issue in *Lennar Homes, LLC v. Wilkinsky*, 353 So. 3d 654 (Fla. 4th DCA 2023), a case involving fairly analogous facts.[1] In that case, Mr. Wilkinsky bought a home in a residential community developed by Lennar. *Id.* at 655. The sales contract in *Lennar* provided, in pertinent part:

> The parties to this Agreement specifically agree that . . . *any Dispute (as hereinafter defined) shall* first be submitted to

---

[1] Although *Lennar* was raised in the pleadings below, and Mid-America's counsel argued at the hearing that "the significant nexus test should not even be applied according to the Fourth DCA case," the trial court did not address *Lennar* in the order on appeal. Thus it is not clear to us whether the trial court considered *Lennar*, treated it as an outlier, or found it to be distinguishable.

mediation and, if not settled during mediation, shall thereafter *be submitted to binding arbitration . . .* and not by or in a court of law or equity. "***Disputes***" (whether contract, warranty, *tort*, statutory or otherwise), *shall include, but are not limited to, any and all controversies, disputes or claims* (1) arising under, or related to, this Agreement, the Property, *the Community* or any dealings between Buyer and Seller; (2) arising by virtue of any representations, promises or warranties alleged to have been made by Seller or Seller's representative; *(3) relating to personal injury or property damage alleged to have been sustained by Buyer*, Buyer's children or other occupants of the Property, or *in the Community . . . .*

*Id.* About two years later, Mr. Wilkinsky was injured while riding his bicycle on a road in the community, the cause of which he attributed to "a raised manhole cover that was improperly paved by Lennar or its agents." *Id.* Lennar's motion to compel arbitration was denied. *Id.*

The Fourth District reversed, not because of its application of the significant relationship/contractual nexus tests, but because it did not need to engage in that analysis to resolve the question. *See id.* at 656-67. While recognizing that, in general, "*[t]he addition of the words 'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law,*" *id.* at 656 (quoting *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013)), the Fourth District nevertheless held that "[t]he significant relationship or contractual nexus test <u>applies only where the arbitration agreement uses broad language that does not expressly include the claim at issue</u>," *id.* (emphasis added); *see also Walsh Grp. v. Zion Jacksonville, LLC*, 379 So. 3d 571, 575 (Fla. 5th DCA 2024) ("[The significant relationship] test applies when . . . 'the arbitration agreement uses broad language that does not expressly include the claim at issue.' "

6

(quoting *Lennar*, 353 So. 3d at 656)); *accord Wilson v. Willis*, 786 S.E.2d 571, 580 (S.C. Ct. App. 2016) ("[A] claim falls within the scope of an arbitration clause if it is encompassed by the language of the clause or if a 'significant relationship' exists between the claim and the contract." (quoting *Partain v. Upstate Auto. Grp.,* 689 S.E.2d 602, 604 (S.C. 2010)), *rev'd on other grounds*, 827 S.E.2d 167 (S.C. 2019).

*Lennar* stands in contrast to the cases cited by the trial court, but it is not inconsistent with those cases. In *Terminix*, the arbitration clause stated, "The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to the interpretation, performance, or breach of any provision of this agreement shall be settled exclusively by arbitration." 668 So. 2d at 1014. This is a classic example of the kind of broad arbitration provision examined in *Seifert*. As the supreme court explained, this kind of broad language necessitates further examination to determine whether a "significant relationship" and a "contractual nexus" exist between the plaintiff's complaint and the arbitration clause in the contract. *Seifert,* 750 So. 2d at 638-39. But as the Fourth District pointed out, this examination is only called for if a broad arbitration clause "does not expressly include the claim at issue." *Lennar*, 353 So. 3d at 656.

*Dewees*, 329 So. 3d 765, also a Fourth District case, draws a finer distinction. In that case, Ms. Dewees fell off her bicycle and hurt herself while riding on a road in a common area in a single-family home community. *Id.* at 768. The basis of her claim was defective maintenance of the roadway. *Id.* The sales contract Ms. Dewees entered with the developer contained the following arbitration clause:

> [A]ny and all claims by or between purchaser and seller which occur post-closing, even those based upon a theory not recognized at the time this agreement is executed, shall be

7

> submitted to binding arbitration . . . . [S]uch claims include, without limitation, claims that arise from or in connection with, or relate to: . . . the home, its design, or its construction . . . [or] the real property on which the home is situated . . . . This provision shall apply to all post-closing claims . . . regardless of the legal theory alleged (including, without limitation, breach of contract, tort, violation of statute, code, rule or regulation, or breach of any implied covenant or duty), the type of injury alleged (including, without limitation, monetary, property damage, personal injury . . . .).

*Id.* at 767-68. Although this clause may appear, at first glance, to be similar to the clause in *Lennar* and the one in the instant case, it is not. This is because, despite its broad language and the references to tort claims and personal injury, the arbitration clause in *Dewees* only provided that it applied to claims arising from or relating to the home or the real property on which the home was situated, whereas the alleged injury occurred on a road elsewhere within the community. Importantly, the arbitration clause in *Dewees* contained no language such as "in the community," *see Dewees*, 329 So. 3d at 770, or as in the instant case, in "common areas." The Fourth District held that this rendered the clause ambiguous, requiring the application of the "significant relationship" and "contractual nexus" tests to the facts alleged in the complaint. *Id.*

In contrast, the arbitration clause in *Lennar* unambiguously required claims of personal injury alleged to have been sustained "in the community" to be subjected to arbitration. *Lennar*, 353 So. 3d at 655. There, Mr. Wilkinsky's complaint alleged that he was injured in the community. *Id.* This ended the analysis because, as in all questions involving the interpretation of a contract, "the plain language of the agreement controls." *See id.* at 657; *see also Lake City Fire & Rescue Ass'n, Local 2288 v. City of Lake City*, 240 So. 3d 128, 130 (Fla. 1st DCA 2018) ("[W]hen the language of the contract is clear and unambiguous,

8

the contract must be interpreted and enforced in accordance with its plain meaning." (quoting *Columbia Bank v. Columbia Devs., LLC,* 127 So. 3d 670, 673 (Fla. 1st DCA 2013))).[2]

## **Conclusion**

The critical facts in the instant case are indistinguishable from those in *Lennar.* As such, we have two choices: adopt the Fourth District's reasoning or declare conflict with *Lennar.* But we find the rationale in *Lennar* to be well considered, logical, and correct. Thus we agree with the analysis and result in *Lennar.* We also conclude that the Fourth District's analysis in *Lennar* is entirely consistent with *Seifert.* Accordingly, we reverse the trial court's denial of Mid-America's motion to compel binding arbitration and remand with directions to grant the motion.

Reversed and remanded with directions.

BLACK and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

_____

[2] Ms. Gonzalez also argues that *Lennar* is distinguishable because the definition of "dispute" in *Lennar* encompasses claims relating to personal injury "sustained" in the community, whereas the definition of "dispute" in the instant case only encompasses claims relating to the "use" of common areas. Because the word "use" implies agency (i.e., that "someone is applying or employing something"), she argues "the use of a common area does not embrace an accident like a trip and fall." We decline the invitation to follow Ms. Gonzalez down this semantical rabbit hole. Just as one "uses" a sidewalk to walk upon, one may also use a common area belonging to an apartment building, apartment complex, or other residential community to get from point A to point B. The act of walking in a common area <u>is</u> a use of that common area.