**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Commissioners of Public Works of the City of Greenville, South Carolina, Respondent,

v.

United States Pipe and Foundry Company, LLC, TEC Utilities Supply Inc., and Hayes Pipe Supply Inc., Defendants,

of which United States Pipe and Foundry Company, LLC is the Appellant.

Appellate Case No. 2025-000520

———————

Appeal from Greenville County
Perry H. Gravely, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-123
Heard February 10, 2026 – Filed March 12, 2026

———————

**AFFIRMED**

———————

C. Mitchell Brown, and Matthew A. Abee, both of Nelson Mullins Riley & Scarborough, LLP, of Columbia; Beattie B. Ashmore, of Beattie B. Ashmore, PA, of Greenville; and Paul G. Joyce, of Buffalo, New York; all for Appellant.

Adam Crittenden Bach, of Tonnsen Bach, LLC, of Greenville; Justin J. Hawal, of Mentor, Ohio; Jessica Holmes, of Chicago, Illinois; Daniel Rock Flynn, of Chicago, Illinois; Adam J. Levitt, of Chicago, Illinois; and John Hampton Scully, of Greenville; all for Respondent.

---

**PER CURIAM:** Appellant United States Pipe and Foundry Company, LLC (US Pipe) challenges the circuit court's order denying its motion to compel arbitration. We affirm.

## FACTS AND PROCEDURAL HISTORY

The central issue in this case is whether an arbitration agreement between a manufacturer and distributor can bind a downstream purchaser asserting a warranty claim. US Pipe is a manufacturer of water and wastewater products including ductile iron pipes. TEC Utility Supply Inc. (TEC) and Hayes Pipe Supply (Hayes) (collectively, distributors) purchased ductile iron pipes with cement mortar lining from US Pipe. US Pipe conditioned the sale of its products to TEC and Hayes on acceptance of its Terms and Conditions of Sale, the contract at the center of this case. Relevant to this appeal, the Terms and Conditions of Sale included a warranty provision and an arbitration provision. The "Terms and Conditions of Sale" was available on US Pipe's website.

Respondent Commissioners of Public Works of the City of Greenville, South Carolina (Greenville Water) operates and controls water utility for Greenville County and portions of the surrounding counties. Between October 2022 and May 2023, Greenville Water purchased ductile iron pipes with cement mortar lining manufactured by US Pipe through distributors. According to Greenville Water, at some point after it purchased the pipes, US Pipe issued to it a Certificate of Compliance that certified the pipes complied with industry standards.

Distributors each have their own terms and conditions of sale that disclaim any warranty and alert the buyer that any warranty would be provided by the goods manufacturer. Notably, the terms and conditions of sale for TEC and Hayes are specific to those entities, do not specifically refer to US Pipe's Terms and Conditions of Sale, and do not include or refer to any arbitration provision. The only reference to US Pipe specifically in the documents between distributors and Greenville Water was in a quote from TEC to Greenville Water in August 2022 that provided,

> If the pipe is not used[,] the manufacture[r] has in it[]s terms [] a 5% cancellation fee.  TEC . . . will only charge a cancellation fee for unused pipe if the manufacture[r] cho[o]ses to exercise said term.   The [US] Pipe representative has verbally committed that they will not do this as there are other consumers in[]line to take said pipe.

Greenville Water alleged it discovered in May 2023, during a construction project, that the cement mortar lining in the interior of the ductile pipes did not comply with industry standards.  Greenville Water then commenced the underlying action against US Pipe, TEC, and Hayes.  Against US Pipe specifically, Greenville Water alleged breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of implied contract, violations of South Carolina's Unfair Trade Practices Act, and unjust enrichment.  Greenville Water's breach of warranty causes of action all relied on warranties created by law under the South Carolina Uniform Commercial Code—Sales (UCC).[1]  The breach of implied contract claim relied on US Pipe's marketing and promotional materials and the Certificate of Compliance representing that the allegedly defective pipes were compliant with the industry standards when, in fact, the pipes did not comply.  Greenville Water sought declaratory relief, "benefit of the bargain damages," consequential damages, and punitive damages.

US Pipe filed a motion to compel arbitration and dismiss the action or, in the alternative, stay the action pending arbitration.  The circuit court denied the motion, finding there was no arbitration agreement between the parties.  This appeal followed.

---

[1] *See* S.C. Code Ann. § 36-2-313(1)(a) (2003) ("Any affirmation of fact or promise, including those on containers or labels, made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods conform to the affirmation or promise."); § 36-2-314(1) ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."); § 36-2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose.").

## STANDARD OF REVIEW

"Appeal from the denial of a motion to compel arbitration is subject to de novo review." *Chassereau v. Global-Sun Pools, Inc.*, 363 S.C. 628, 631, 611 S.E.2d 305, 307 (Ct. App. 2005), *aff'd on other grounds*, 373 S.C. 168, 644 S.E.2d 718 (2007). "Under de novo review, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports those findings." *Wilson v. Willis*, 426 S.C. 326, 335, 827 S.E.2d 167, 172 (2019).

## LAW/ANALYSIS

### I.      Existence of the Arbitration Agreement under the UCC

US Pipe argues that pursuant to the UCC, the unsigned arbitration provision in the Terms and Conditions of Sale is binding against Greenville Water because the UCC binds downstream purchasers even when there is no direct contractual relationship between the parties. US Pipe asserts that because Greenville Water is pursuing warranty and contract claims, it must accept the contractual limitations placed on the warranties under the Terms and Conditions of Sale. We disagree.

"An arbitration agreement, of course, is a contract. The elements necessary for the formation of any contract are (1) an offer, (2) acceptance of the offer, and (3) the mutual exchange of benefits . . . ." *Lampo v. Amedisys Holding, LLC*, 445 S.C. 305, 311, 914 S.E.2d 139, 142 (2025) (citation omitted). "A party seeking to compel arbitration must demonstrate the existence of a valid contract to arbitrate by establishing these three elements." *Id.* "When deciding a motion to compel arbitration under the [South Carolina Uniform Arbitration Act] or the [Federal Arbitration Administration (FAA)], the court should look to the state law that ordinarily governs the formation of contracts in determining whether a valid arbitration agreement arose between the parties." *Smith v. D.R. Horton, Inc.*, 403 S.C. 10, 14, 742 S.E.2d 37, 40 (Ct. App. 2013).

The transaction here is analyzed under the UCC. *See* § 36-2-102 (providing that the UCC applies to transactions in goods); § 36-2-105(1) (defining "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid"). The UCC imposes obligations on sellers by establishing express and implied warranties covering goods sold on the market. *See* § 36-2-313(1)(a) (express warranty by seller's affirmation or promise); § 36-2-314(1) (implied warranty of merchantability); § 36-2-315 (implied warranty of fitness for a particular

purpose).  However, a seller or manufacturer may exclude or disclaim the created warranty and may limit the remedies available for breach of such warranties.  *See* § 36-2-316 (explaining how a seller or manufacturer may limit the remedies available for breach of warranty and exclude or disclaim warranties).

The UCC traditionally governs sales of goods and contracts for the sale of goods solely between the seller and the buyer.  However, section 2-318 provides that the UCC-established warranty rights flow with the product regardless of privity and that a subsequent user or purchaser with no privity may enforce those warranty rights against the seller or manufacturer.  *See* § 36-2-318 ("A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume[,] or be affected by the goods and whose person or property is damaged by breach of the warranty."); U.C.C. § 2-318, cmt. 2 (Am. L. Inst. & Unif. L. Comm'n 1977) ("[A]ny beneficiary of a warranty may bring a direct action for breach of warranty against the seller whose warranty extends to him.").  The UCC extends warranty rights only as they are defined when the product enters the market.  *See* U.C.C. § 2-318, cmt. 1 (Am. L. Inst. & Unif. L. Comm'n 1977) (providing that a seller is not precluded from excluding or disclaiming a warranty or limiting the remedies of the original purchaser and any beneficiaries and these provisions would be "equally operative against beneficiaries of warranties" under section 2-318).  Put another way, when a manufacturer or seller places a product in the market that is subject to UCC-created warranties, the limitations, disclaimers, and exclusions associated with that product's warranties flow with the product and can be enforced against the manufacturer or seller regardless of privity with subsequent users or purchasers.

US Pipe reads the extension of warranties and their limitations to subsequent users or purchasers under section 2-318 to include any agreement to arbitrate existing between the original buyer and seller.  US Pipe's reading of 2-318 ignores that it is the limitations of *remedies* that extend to subsequent users.  *See* U.C.C. § 2-318, cmt. 1 (Am. L. Inst. & Unif. L. Comm'n 1977) (providing that a seller is not precluded from excluding or disclaiming a warranty or limiting the remedies of the original purchaser and any beneficiaries and these provisions would be "equally operative against beneficiaries of warranties" under section 2-318).  Arbitration is not a remedy.  *See Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 542, 542 S.E.2d 360, 365 (2001) ("An agreement providing for arbitration does not determine the remedy for a breach of contract but only the forum in which the remedy for the breach is determined.").

Importantly, section 2-318 was designed to grant a subsequent user or purchaser the power to enforce warranty rights independent of a contract. *See Recold, S.A. de C.V. v. Monfort of Colorado, Inc.*, 893 F.2d 195, 198–99 (8th Cir. 1990) ("The [UCC] does not require [the downstream purchaser] to sue under the [manufacturer and distributor's] contract, but rather gives [the downstream purchaser] warranty rights against [the manufacturer] independent of any contract."). US Pipe's exclusions, disclaimers, and limitations to remedies associated with warranties in the Terms and Conditions of Sale—which governed the transactions between it and distributors—are operative against Greenville Water. However, the presence of the warranty provision in the same contract as an arbitration agreement does not attach the arbitration provision to Greenville Water's power to enforce warranty rights under statute.

For these reasons, we affirm the circuit court because there is not a valid arbitration agreement between US Pipe and Greenville Water under the UCC.

## II. Direct Benefits Estoppel

US Pipe argues direct benefits estoppel applies because Greenville Water's claims arise "solely from the contractual relationship that Greenville Water allege[d] to have with" US Pipe. US Pipe asserts that the performance of delivering the goods to distributors was "a direct benefit to Greenville Water" and the assertion that the pipes did not meet the specifications "establishes sufficient reliance on the Terms [and Conditions of Sale]" to apply direct benefits estoppel. Finally, US Pipe asserts that estoppel must be applied to prevent injustice because it is necessary to prevent other downstream purchasers from ignoring their arbitral responsibilities. We disagree.

"[E]quitable estoppel . . . estops a nonsigner from refusing to comply with an arbitration provision of a contract if (1) the nonsigner's claim arises from the contractual relationship, (2) the nonsigner has 'exploited' other parts of the contract by reaping its benefits, and (3) the claim relies solely on the contract terms to impose liability." *Weaver v. Brookdale Senior Living, Inc.*, 431 S.C. 223, 230, 847 S.E.2d 268, 272 (Ct. App. 2020) (quoting *Wilson*, 426 S.C. at 340–44, 827 S.E.2d at 175–77). "[W]here plaintiffs sue and seek relief based on contracts containing arbitration clauses, courts have applied equitable estoppel." *Wilson*, 426 S.C. at 344, 827 S.E.2d at 177 (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417–18 (4th Cir. 2000)). Effectively, direct benefits estoppel requires a plaintiff relying on a contract to take the entire contract and not cherry pick the parts that benefit it.

We hold the circuit court did not err by determining that direct benefits estoppel did not apply because Greenville Water did not seek any benefits under the Terms and Conditions of Sale and did not rely on the contract to impose liability. Warranties are often embedded in contracts and plaintiffs may seek to enforce warranties under the contract or be third party beneficiaries to the contract. That is not the case here.

The sources of Greenville Water's warranty and implied contract claims are the UCC, Certificate of Compliance, and promotional and marketing materials created by US Pipe, not the Terms and Conditions of Sale. At no point does Greenville Water allege that US Pipe breached an obligation expressed in the Terms and Conditions of Sale. *Weaver*, 431 S.C. at 230, 847 S.E.2d at 272 ("[E]quitable estoppel . . . estops a nonsigner from refusing to comply with an arbitration provision of a contract if (1) the nonsigner's claim arises from the contractual relationship . . . ." (quoting *Wilson*, 426 S.C. at 340–44, 827 S.E.2d at 175–76)). The Terms and Conditions of Sale may be invoked by US Pipe as evidence that it excluded or disclaimed warranties and limited remedies for breach. Critically though, Greenville Water's claims still would flow from the UCC. *Wilson*, 426 S.C. at 344, 827 S.E.2d at 177 ("[W]here plaintiffs sue and seek relief based on contracts containing arbitration clauses, courts have applied equitable estoppel.").

Accordingly, we affirm the circuit court's finding that direct benefits estoppel did not apply because Greenville Water has not exploited the Terms and Conditions of Sale and does not seek to impose liability based on the contract.

We need not address the remaining issues on appeal because our ruling on the arbitration agreement's existence is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address an issue when a decision on another issue is dispositive).[2]

---

[2] US Pipe also argues that this court must reverse and remand because the circuit court erred by (1) resolving factual disputes without holding a summary trial as required by the FAA; (2) making factual findings about Greenville Water's reliance on the Certificate of Compliance; (3) not deciding the terms of the parties' agreement; and (4) failing to fix transcript errors. All these arguments relate to the circuit court's findings in the order denying the motion to compel. US Pipe did not raise these arguments to the circuit court. Consequently, these issues are not preserved and thus, are not properly before this court. *See Smith*, 318 S.C. at 455,

For the foregoing reasons the circuit court's order is

**AFFIRMED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**

---

458 S.E.2d at 429 (1995) ("[A]n appellate court cannot address an issue unless it was raised to, and ruled upon by, the trial court.").